MEDFORD LUMBER COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Respondents.

*September 12—October 9, 1928.*

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe,* of counsel, all of Milwaukee, and oral argument by *Mr. Doe.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

Owen, J. The plaintiff Medford Lumber Company entered into a written contract with one Joseph Mahner whereby the said Mahner agreed to cut, log, and deliver in rollways at the railroad tracks all of the merchantable saw-log timber standing on lands described, "or other lands as may be agreed upon at a later date." The contract prescribed the length into which the logs were to be cut and the minimum circumference at the top. It further prescribed that the logs should be decked in a good and workmanlike manner and the maximum and minimum distance that they should be decked from the rail. The lumber company agreed to pay $6 per thousand feet for the work. The contract further provided "that the party of the second part shall not pay higher wages than that paid by the party of the first part in their logging operations, unless by mutual consent," and "that the party of the second part shall board men and teams at the camps of the party of the first part at the rate of $6 per week per man and $1.35 per day per teams;" and "All of the above work is to be done in a good and workmanlike manner by the party of the second part, and must not be sublet as a job; and the work to be done under the supervision and direction of the party of the first part."

Upon prosecuting work under this contract Mahner sustained injuries resulting in his death. The Industrial Commission made an award under the workmen's compensation act to his widow. The appellants contend that Mahner was an independent contractor and not an employee of the company.

In *Kneeland-McLurg L. Co. v. Industrial Comm.* 196 Wis. 402, 220 N. W. 199, it was held that a contract quite similar gave rise to an independent contractor rather than an employee. That case is controlling here, unless the contentions of respondents, to be noted, compel a different conclusion. It is conceded that one of the controlling tests to be applied in determining whether the status of employee

or independent contractor exists under such a contract is whether the right to control the details of the work is conferred upon the one who undertakes to perform the work, or is retained by the one who contracts for the performance of the work. Respondents contend that the right to control the details of the work was reserved by the Medford Lumber Company. That contention is based, first, upon the language of the contract providing that the work "be done under the supervision and direction of the party of the first part;" and second, upon the fact, as contended, that the lumber company actually exercised control over the details of the work, —its conduct in that respect amounting to a practical construction of the contract.

A provision in a contract reserving in the one who is contracting for the performance of the work the right to supervise and direct the work is very common in contracts of this character, and especially in construction contracts. Generally the purpose of such a provision is to see that the work is so executed as to bring about the result contemplated by the contract. It is the ultimate result, and not the manner in which it shall be done, with which the owner is concerned. He has a right to see that proper materials are used, that the work is done in a workmanlike manner, etc., and where he has that right his failure to object seasonably, under some circumstances, constitutes a waiver of his right to insist upon a full and faithful performance of the contract. The object and purpose of such a reservation, in connection with the work to be performed, must be kept in mind in determining whether it reserves to the owner control over the details of the work. We have been cited to no case in which it has been held that such a provision reserves to the one contracting for the performance of the work control over the details of the work. On the contrary, appellants cite many cases holding that such a provision reserves to the one contracting for the performance of the work only such supervision as is

reasonably necessary to see that the ultimate result contemplated by the contract is produced. *Farmer v. St. Croix P. Co.* 117 Wis. 76, 93 N. W. 830; *Kneeland-McLurg L. Co. v. Industrial Comm.* 196 Wis. 402, 220 N. W. 199; *Carleton v. Foundry & M. P. Co.* 199 Mich. 148, 165 N. W. 816; *Smith v. State Workmen's Ins. Fund,* 262 Pa. St. 286, 105 Atl. 90; *Robinson v. Webb,* 11 Bush (Ky.) 464; *U. S. v. Driscoll,* 96 U. S. 421; *Harding v. Boston,* 163 Mass. 14, 39 N. E. 111; *Good v. Johnson,* 38 Colo. 440, 88 Pac. 439; *Montain v. Fargo,* 38 N. Dak. 432, 166 N. W. 416. We must hold that the contract in terms did not reserve to the lumber company any right to control the details of the work.

It is further claimed that the lumber company did actually control the details of the work. It is unnecessary to refer to the evidence which it is claimed sustains this conclusion. We have given such evidence our consideration. It consists of admissions of the general manager that he went through the woods occasionally, about once a week, and talked with Mahner about the job, and evidence to the effect that the manager and the superintendent would go to the job occasionally, look around through the woods, talk to Mahner, and talk about how the work was going; "they said it was either going all right—otherwise, if it wasn't, they told him. He walked through the woods, looked around and seen the logs being cut. If they were cut too short he would tell them to cut them longer. He said that to the fellows who were sawing." There is no evidence that the company exercised the right to hire or discharge men or to exercise any authority over the manner of performing the work. The contract required the logs to be cut a certain length. This was the ultimate result sought to be accomplished by the contract. Logs cut too short might work a serious loss to the lumber company, and it was its privilege and its duty to see that they were cut the proper length. Even though this was spoken of to the men in the woods when logs were

seen to be cut too short, it was no evidence of an attempt on its part to control the details of the work. We discover no conduct on the part of the lumber company amounting to a practical construction of the contract inconsistent with the natural meaning of the language employed therein.

Some contention is made that the fact that the Medford Lumber Company paid the men employed by Mahner upon the presentation of a time order at the office justifies the conclusion that the men working under Mahner were really employees of the company. Advancements are customarily made under such contracts as the work progresses. The lumber company was interested in seeing that the men who worked for Mahner received their pay: this to free its timber of log liens. Advancements made to Mahner in this way protected the company and constituted a proper and business-like method of handling the situation. The method pursued cannot give rise to an inference, in view of the written contract, that the employees of Mahner were really the employees of the company.

The situation presents no questions of fact. The interpretation of the written contract was one of law. The facts relied upon for a practical construction of the contract do not as a matter of law render the terms of the contract in any manner ambiguous so that its proper construction depends upon any finding of fact. It appearing as a matter of law that the status of Mahner was that of an independent contractor, it follows that the judgment appealed from must be reversed, and the cause remanded with instructions to enter judgment vacating and setting aside the award of the Industrial Commission.

*By the Court.*—So ordered.